UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EVELYN BELTRAN,

                       Plaintiff,

v.
                                                3:15-CV-00424
                                                (TWD)

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main St.
P.O. Box 89
Endicott, New York 13761

HON. RICHARD S. HARTUNIAN          SERGEI ADEN, ESQ.
U.S. Attorney for the                       Special Assistant U.S. Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL           STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Plaintiff Evelyn Beltran brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for Disability Insurance Benefits and Supplemental Security Income. *See generally* Dkt. No. 14. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge. (Dkt. No. 13.) For the reasons discussed below, the Court recommends the Commissioner's decision be reversed and this claim be remanded for further proceedings consistent with this Decision and Order.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Evelyn Beltran protectively filed for Disability Insurance Benefits on September 1, 2011, alleging disability beginning July 1, 2010. (Administrative Transcript at 11.[1]) Plaintiff was born on June 21, 1968, and alleges disability due to asthma and allergies. (T. at 13 and 161.) Her initial application was denied on February 1, 2012, and again on May 4, 2012. (T. at 62 and 70.) She then filed a written request for a hearing on March 8, 2012. (T. at 77.) An administrative hearing was originally scheduled for March 7, 2013, but was postponed so that Plaintiff could retain counsel. (T. at 58.) The hearing was held on July 9, 2013, before Administrative Law Judge ("ALJ") Marie Greener. (T. at 22.) The ALJ issued her decision on September 5, 2013, and found Plaintiff not disabled. (T. at 8-21.) That decision became the final decision of the Commissioner on March 6, 2015, when the Appeals Council denied Plaintiff's request for review, finding there was no reason under their rules to review the ALJ's

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations to filed documents other than the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

decision. (T. at 1.) Plaintiff timely commenced this action in the United States District Court for the Northern District of New York on April 9, 2015. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2016). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional

capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perez,* 77 F.3d at 46).

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado,* 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.  THE ALJ'S DECISION

The ALJ found at step one of the analysis that Plaintiff has not engaged in substantial gainful activity since September 1, 2011. (T. at 13.) In fact, the ALJ found that Plaintiff had never engaged in substantial gainful activity. *Id.* At step two, the ALJ found that Plaintiff had two severe impairments; asthma and extrinsic allergies. *Id.* Her allergies include trees, pollen, grass, cats and dogs. (T. at 14.) The ALJ found that Plaintiff's obesity and borderline cardiomegaly were not severe. (T. at 13.) She then found at step three that Plaintiff's

5

impairments or combination of impairments did not meet or medically equal the severity of listed impairments 3.02A in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

Continuing to step four, the ALJ determined Plaintiff's residual functional capacity and found that she was capable of performing less than the full range of sedentary work as defined in 20 C.F.R. 416.967(a). (T. at 14.) The ALJ further opined that Plaintiff retained the ability to "lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for two hours in an eight-hour work day." *Id.* However the ALJ also concluded she "can perform work only indoors with no more than rare exposure to smoke, fumes, dust, or other respiratory irritants." *Id.* In support of her determination that Plaintiff was capable of performing sedentary work, the ALJ relied on medical records from a number of Plaintiff's treating physicians and consultative reports. *Id.* at 15-16.

The ALJ determined at step five that, given the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. at 16.) The ALJ found that based upon Plaintiff's RFC for less than sedentary work, Plaintiff's age, education, and work experience, a finding of "not disabled" was appropriate in consideration of Medical-Vocational Rule 201.24 and 201.18. *Id.*

**IV. THE PARTIES' ARGUMENTS**

Plaintiff claims that: (1) the ALJ failed to consider her inability to go outdoors to get to a job; (2) the ALJ failed to consider Plaintiff's potential absenteeism from work; (3) the ALJ failed to consider Plaintiff's inability to read; and (4) even if the ALJ correctly determined Plaintiff's RFC, the ALJ erred in not consulting a vocational expert. *See generally* Dkt. No. 14. Defendant contends that the ALJ's determination of Plaintiff's RFC and decision not to consult a vocational

6

expert are supported by substantial evidence.  *See generally* Dkt. No. 15.

## V. DISCUSSION

### A. Residual Functional Capacity

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id.* § 404.1545(a).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. §§ 404.1569a(b), 416.969a(a).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2010).  Once the ALJ has

resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). Each finding must be considered separately and the ALJ must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citation omitted); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Each assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p. "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 307 F. Supp. 2d at 440. RFC may then be expressed in terms of the exertional levels (sedentary, light, etc.) to determine the particular types of work a claimant may be able to perform. *Id*.

The Second Circuit has found that failure to specify the basis for a conclusion as to RFC is reason enough to vacate a decision of the Commissioner. *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990) (stating that because the Secretary failed to articulate the basis for the findings as to claimant's residual functional capacity, the court vacates and remands). Moreover, remand is appropriate where the court is unable to fathom the Commissioner's rationale in relation to the evidence in the record without further findings or explanation for the decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### 1. Inability to Go Outdoors to Get to Work

Plaintiff contends that the ALJ incorrectly determined her RFC because the ALJ failed to consider that Plaintiff is unable to go outdoors and therefore unable to travel to any employment

she may obtain. (Dkt. No. 14 at 9.) To support this assertion, Plaintiff claims the ALJ made two specific errors: (1) the ALJ did not take into account the testimony of Plaintiff's daughter, and (2) the ALJ did not accept the unanimous opinions of all of Plaintiff's medical providers relating to her inability to be outdoors. *Id*. at 9-10.

The issue of Plaintiff's ability to travel to and from work was never raised prior to the ALJ's decision and therefore there was no reason for the ALJ to address it. At the July 9, 2013, administrative hearing, no questions were asked and Plaintiff never spoke about her ability to get to or from a job. (T. at 22-48.) Even during the line of questioning regarding Plaintiff's past employment, no issues related to traveling to work were raised. (T. at 28-30.) Further, Plaintiff's daughter's testimony never specifically addressed her mother's ability to get to a place of employment. *See generally* T. at 43-48. She spoke only generally of her mother's illness and her difficulty being outside. *Id*. Plaintiff's daughter even admitted that Plaintiff does still leave the house for certain activities including her doctor's appointments. *Id*. at 48. There is also no mention of Plaintiff's alleged difficulty getting to or from work in any of her medical records. She has not been employed during the time period for which relevant medical records were provided; however, in a September 28, 2010, treatment note pulmonologist Lee Edmonds, M.D., noted that Plaintiff had been out walking in search of employment the previous day. (T. at 311.) This medical evidence, combined with the medical evidence discussed below, suggests that Plaintiff is able to be outdoors, specifically for the purposes of seeking employment. Therefore, in light of the medical evidence, even if the ALJ were required to explicitly discuss Plaintiff's daughter's testimony, her failure to do so was harmless error.

    **2.**    **Absence from Work**

Although Dr. Edmonds opined that Plaintiff would be absent more than four times per

month, there is sufficient evidence to demonstrate the opinion is not supported. (T. at 548.) On his disability worksheet dated November 7, 2012, Kevin Steckline, R.P.A., checked boxes indicating that Plaintiff could perform activities such as shopping, travel without assistance, walk a block, use public transportation, climb a few steps, prepare simple meals, and care for her personal hygiene. (T. at 377.) Consultative family practitioner Justine Magurno, M.D., also noted that Plaintiff goes out and socializes with friends. (T. at 322.) On exam, Dr. Margurno noted Plaintiff was not in any acute respiratory distress and her lungs were clear without wheezing to auscultation. (T. at 324, 337.) Pulmonary function tests showed a "moderate restrictive pattern, not consistent with diagnosis of asthma, but does not exclude it." (T. at 325; *see also* T. at 337.) Plaintiff has maintained a myriad of doctors' appointments in various locations over the years and there have been instances where Plaintiff reported to her doctors without an appointment. (T. at 311.) All of these examples demonstrate that Plaintiff is able to perform her activities of daily living and go out into the community regularly for appointments and social visits which, when taken together, is substantial evidence to refute Dr. Edmond's opinion that Plaintiff would be absent from her job more than four times per month.

      **3.    Inability to Read**

Plaintiff's argument that the ALJ failed to consider her inability to read or understand English is not factually supported. The ALJ clearly addressed Plaintiff's communication abilities and found that Plaintiff was able to carry on conversations in English during her hearing and that, although she sometimes needed help reading notices, she was also sometimes able to read them on her own. (T. at 16.) Plaintiff testified to the same at her hearing. (T. at 28.) When asked "are you able to read?" Plaintiff responded in English "I do. I get help sometimes with the reading" and then later "Sometime I do it by myself. Sometime I need help." *Id*.

### B. Vocational Expert

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2012). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a).

In making this determination, the ALJ may apply the Medical Vocational Guidelines (the "grids") or consult a vocational expert. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. Pt. 404, Subpt. P, App. 2. Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable grids. *Rosa*, 168 F.3d 72 at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). The existence of

nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Id.* The nonexertional impairment must be significant, meaning it has more than a negligible impact on a claimant's ability to perform a full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Id.* at 411.

Plaintiff contends that the ALJ was required to consult a vocational expert because the ALJ determined that Plaintiff could "only work indoors with no more than rare exposure to respiratory irritants." (Dkt. No. 14 at 4 and T. at 14.) Commissioner responded that the ALJ's RFC determination limited Plaintiff to rare exposure to environmental irritants beyond those in an ordinary work setting. (Dkt. No. 15 at 21.)

In general, it is true that "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, [or] humidity" and that "even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 at *9 (1996). This court has interpreted SSR 96-9p to give administrative notice only with respect to "certain *extreme* environmental conditions and *unusual* hazards rarely required in sedentary, unskilled work" and that with respect to more common irritants such as odors or dust, evaluations must be conducted on an individual basis. *Long v. Colvin*, No. 3:12–cv–578 (GLS/ESH), 2013 WL 3051601 at *6 (N.D.N.Y. June 17, 2013) (holding that there was not

substantial evidence to support a finding that jobs existed that the plaintiff could perform. The ALJ's framework analysis was insufficient when the ALJ indistinctly articulated the plaintiff's environmental limitations and failed to perform an individualized erosion-of-occupational-base analysis) (emphasis in original).

In addition to SSR 96-9p, SSR 85-15 states that:

> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.
>
> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [Vocational Specialist].

SSR 85-15, 1985 WL 56857 at *8 (1985).

"A restriction to avoid excessive amounts of respiratory irritants such as dust has minimal impact because most job environments do not involve great amounts of dust. But, when an individual can tolerate very little amounts, the impact is considerable. Finally, an environmental restriction falling in the middle requires consultation of occupational reference materials or services of a vocational specialist to determine the degree that a claimant's occupational base is eroded." *Long*, 2013 WL 3051601 at *7 (citing SSR 85-15, 1985 WL 56857 at *8). The Court in *Long* held that SSR 85-15 required the ALJ to perform an erosion-of-occupational-base analysis with respect to the plaintiff's environmental restrictions. *Long*, 2013 WL 3051601 at *7. Where the ALJ provides a thorough discussion of the effects a nonexertional limitation would have on a claimant's occupational base, consultation of a vocational expert is not required. *Cuenca v. Comm'r of Soc. Sec.*, 3:14-CV-0859 (GTS/WBC), 2016 WL 2865726 at *11 (N.D.N.Y. April 19, 2016).

13

Here, the ALJ's discussion of how Plaintiff's nonexertional limitations, specifically as they relate to her environmental restrictions, is sparse at best. The ALJ stated:

> The claimant has additional limitations that preclude the performance of the full range of sedentary work in that she can only work indoors with no more than rare exposure to respiratory irritants. However, these additional limitations have little or no effect on the occupation base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of these rules. Social Security Ruling 83-14 dictates that the vast majority of sedentary occupations are performed indoors such that outside environmental limitations are not significant. Social Security Ruling 96-9p also dictates that the need to avoid exposure to extreme temperatures, wetness, and humidity would not significantly erode the sedentary occupational base.

(T. at 16-17.)

The ALJ did not perform the type of individualized analysis required by *Long* and *Cuenca*. While she did state that Plaintiff could work only indoors, there is no specific identification of the type of indoor environments Plaintiff is able to tolerate based upon her condition. This is evidenced by the fact that the ALJ did not state the extent of Plaintiff's restriction in terms of the amount of irritants to which Plaintiff must have very rare exposure. For example, on review this Court is unable to determine if Plaintiff is required to have very rare exposure only to large amounts of irritants or very rare exposure to even a miniscule amount of irritants so as to leave the Plaintiff confined to a clean room type setting. It is impossible to make that determination because the ALJ's decision gave no evaluation of Plaintiff's nonexertional restrictions beyond a mere formulaic recitation of several SSR provisions. The ALJ's use of the term "rare exposure" also makes it difficult for the Court to determine the SSR 85-15 magnitude of exposure into which Plaintiff's condition fits. Certainly, the ALJ's terminology appears closest to the term "very little exposure" used in SSR 85-15 but without a

more in depth and individualized discussion of Plaintiff's specific exposure limitations the Court cannot make that determination conclusively. Under these circumstances, the ALJ should have consulted occupational reference materials or the services of a vocational expert to specifically determine whether a significant number of jobs exist in the national economy that Plaintiff could perform in her highly restricted indoor environment.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is vacated.

**ACCORDINGLY**, it is hereby

**ORDERED** that

    1. The Commissioner's decision is **VACATED**; and

    2. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

Dated: September 16, 2016
       Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge